# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE, | |
| *Plaintiff*, | Civil Action No.: 2:23-CV-433 |
| v. | Jury Demanded |
| ABW LLC, et al. | |
| *Defendants*. | |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff Deutsche Bank Trust Company Americas, as Trustee ("Deutsche Bank") moves for entry of default judgment against Defendant Ole Aagaard-Jensen ("Aagaard").

### I.    INTRODUCTION

1. This lawsuit seeks to recover an overpayment of funds that Aagaard received but has refused to return.

2. On September 20, 2023, Plaintiff sued Aagaard. The other defendants—excluding William Wade Wynn—were entities he used to conduct business. These corporate entities included Defendant ABW Vessel Management LLC, a Texas corporation with a business address in this District. Plaintiff's nine causes of actions included eight against Aagaard.

3. When it filed this lawsuit, Plaintiff believed that Aagaard resided at P.º del Mar 94, Justo Sierra, 24114 Cd del Carmen, Campeche, Mexico. Dkt. 1 at p. 3. Plaintiff began efforts to serve Aagaard at this address through the Hague Convention. Aagaard's postings on Facebook then indicated that Aagaard was traveling between different parts of Mexico and Denmark. He further indicated that he planned to move to Denmark.

4. After reviewing these social media posts and becoming concerned that Plaintiff did not have a current address for Aagaard, Plaintiff moved this Court for leave to serve him through social media, pursuant to Federal Rule of Civil Procedure 4(f). Dkt. 7. On April 22, 2024, the Court granted the motion, requiring Plaintiff to attempt to effectuate service through email and Aagaard's various social media accounts. Dkt. 13.

5. On May 4, 2024, Plaintiff's counsel sent messages to Aagaard via email, Facebook messenger, and LinkedIn—the same addresses and accounts listed in the Court's Order—and included copies of the Original Complaint and Summons in English, Spanish, and Danish. *See* Dkt. 14-1. The email went undelivered because the "[d]omain has no MX records or is invalid." Dkt. 14-5. No similar notices were received from the messages sent via the social media platforms. In the messages to Aagaard, he was advised that he had twenty-one (21) days after service of this summons to file some responsive pleading with the Court. He was also informed: "If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint." *See* Dkt. 14-2. The twenty-one-day deadline made Aagaard's response deadline May 28, 2024.

6. Aagaard failed to respond by the deadline provided. Dkt. 13. Having not received any response, on June 11, 2024, Plaintiff's counsel sent a follow-up message to Aagaard over Facebook. *See* Dkt. 16-1. In this message, Aagaard was informed that Plaintiff would request a default judgment due to his lack of response. Thereafter, Aagaard's Facebook page was made private, so that Plaintiff can no longer use this method to determine his location.

7. Aagaard did not file a responsive pleading or otherwise defend the suit.

8. On June 18, 2024, the clerk entered a default against Aagaard. Dkt. 17. Plaintiff delayed filing this motion to provide Aagaard additional time to respond, but Aagaard still has not responded to this lawsuit nor any of the social media messages he has received about this lawsuit.

9.  Since this lawsuit was filed, Plaintiff has followed the necessary procedures to ensure that Aagaard has been made aware of this lawsuit. Despite this, Aaggard has chosen not to respond. Therefore, Plaintiff requests entry of default judgment against Aagaard.

## II.   ARGUMENT

10.  After an entry of default has been entered, a Court may render a default judgment against a party who has not filed a responsive pleading or otherwise defended the suit. FED. R. CIV. P. 55(b)(2); *see New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Here, since the allegations in the Original Complaint are deemed admitted, the Court should enter a default judgment against Aagaard. *See Crenshaw Media Grp. LLC v. Davis*, No. 3:17-CV-2204, 2018 WL 3496473, at *1 (N.D. Tex. July 20, 2018) (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

11.  Despite Aagaard's failure to respond to messages about this lawsuit, he continued to post on his Facebook account. *See* Dkt. 16-1. In fact, after receiving copies of the complaint and summons, Aagaard made at least four more posts on his Facebook page. Dkt. 16-1. (Plaintiff cannot determine how many additional posts Aagaard may have made because, as of the date of this filing, Aagaard has locked has Facebook profile, making it no longer accessible to the public.) Under these circumstances, it is reasonable to conclude that Aagaard received the messages sent to him via Facebook and disregarded them.

12.  Aagaard is neither an infant (under age 21) nor an incompetent person; he is not in the active military service of the United States of America or its officers or agents, and he was not six months before the filing of this case.

13. Plaintiff asserted eight causes of actions against Aagaard. To streamline this motion, Plaintiff seeks default judgment on three of them: Breach of Fiduciary Duty, Breach of Contract, and Fraud, and seeks one damages award calculated the same for each cause of action.

### A. Breach of Fiduciary Duty

14. An action for breach of fiduciary duty in Texas requires: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007). Here, each element is readily established.

15. A fiduciary relationship existed between Aagaard and the Noteholders, based on the parties' agreements, including the Engagement Letter and Funding Agreement. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 678 (Tex. App.—Ft. Worth 2010, no writ) ("Fiduciary duties may arise from formal and informal relationships and may be created by contract.").

16. When Aagaard failed to return the misappropriated funds sent to his account and then misrepresented why the funds could not be sent back to the Noteholders, Aagaard knowingly breached his duty to the Noteholders.

17. As a result of the breach, Aagaard caused financial harm to the Noteholders, by misappropriating funds that they were entitled to under the relevant agreements. As a result, on behalf of the Noteholders, Plaintiff seeks recovery of the funds that Aagaard misappropriated.

### B. Breach of Contract

18. Section 5 of Funding Agreement selects New York law. And under New York law, to recover on a breach of contract action, a plaintiff must prove: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract;

(3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). Each element is easily established.

19. Aagaard and the Noteholders entered into a Funding Agreement on May 29, 2022. This agreement contemplated that funds from the Noteholders would be provided to Aagaard and ABW to cover costs related to the anticipated sale of Centenario and two similar vessels. The parties agreed that the Funding Agreement "constitutes a legal, valid, and binding agreement of the parties enforceable in accordance with the terms of this Agreement." Dkt. 1-3.

20. ABW and Aagaard periodically made requests for payments of anticipated expenses; each time, the Noteholders paid as requested.

21. Section 2(e) of the Lending Agreement provided that any unapplied Post-Deposit Amounts would be returned to the Noteholders. But when the Noteholders requested that ABW and Aagaard return the unapplied funds, Aagaard failed to do so, breaching the Funding Agreement.

22. As a result of the breach, Aagaard caused financial harm to the Noteholders, by misappropriating funds that they were entitled to under the relevant agreements.

**C. Fraud**

23. Under Texas law, the elements of fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 674 (5th Cir. 2015).

24. As detailed in the Original Complaint, Aagaard represented to the Noteholders that there was a "tax problem" with the funds that were sent to his personal account in New York, as it was "going to be levied personal income tax" and that the Noteholders would need to wait until his situation had been all sorted out before he could return the funds. Dkt. 1 at pp. 9–10. Additionally, Aagaard represented that he was in communication with Ernst & Young to remedy this situation. These communications took place from October 2022 and continued through December 2022.

25. It was later discovered that Aagaard had not been in communication with Ernst & Young during that time, and that there was no new tax problem, since Aagaard's personal account in New York was used for prior fundings from the Noteholders. Dkt. 1 at p. 11.

26. By representing that he was taking care of the situation, Aagaard was able to buy himself time to transfer certain funds from his account to unauthorized accounts before the Noteholders were aware that he did not intend to pay back these funds. Aagaard made false misrepresentations to the Noteholders in hope that they would delay the process.

27. The communications regarding the tax problem took place as part of the Noteholder's attempt to retrieve the unused Post-Deposit Funds after the written demands for the funds were sent. Aagaard delayed the Noteholders because of these alleged conversations, as the Noteholders sent a final demand on January 4, 2023. By that point, Aagaard had already moved some, if not all, of the misappropriated funds.

28. As a result of Aagaard's actions, Aagaard caused financial harm to the Noteholders, by misappropriating funds that they were entitled to under the relevant agreements. As a result, on behalf of the Noteholders, Trustee Deutsche Bank is seeking to recover the misappropriated funds—the unused Post-Deposit Amounts.

**D. Damages**

29. Plaintiff seeks liquidated damages in the amount of $3,011,285.24, established by the evidence filed with the Court attached to the Complaint. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (concluding that Federal Rule of Civil Procedure 55(b)(2) does not always require an evidentiary hearing, when the amount claimed is a liquidated sum or one capable of mathematical calculation). As shown in the summary attached as Exhibit H to the Complaint (Dkt. 1, pgs. 94-95), the amount of payments to be refunded by Aagaard was calculated at $3,106,285.24. Of this amount, $95,000 was returned to Plaintiff by Wynn. *See* Complaint, ¶ 23. Thus, the remaining amount of payments owed by Defendant Aagaard is $3,011,285.24.

30. Plaintiff further request pre-judgment interest at the amount of Texas's statutory pre-judgment interest rate. Federal district courts have discretion to determine the rate for pre-judgment interest when, as here, a federal statute does not apply. *See Branch Banking and Trust Co. v. Re Rez L.P.*, 2021 WL 863766, at *9-10 (E.D. Tex. Jan. 8, 2021). As explained in *Branch Banking*, the pre-judgment interest rate for breach of contract claims in Texas is the same rate as the post-judgment interest rate. *Id.* at *9. The current post-judgment interest rate, according to the Texas Office of Consumer Credit Commissioner, is 8.5%.[1] Plaintiff asks that the pre-judgment interest accrue starting November 11, 2022, the date of the reconciliation showing the overpayment. *See* Complaint (Dkt. 1), Ex. H. Plaintiff notes that this is a more conservative date than the earlier date, when Aagaard received the over-payment.

31. In the alternative, if the clerk and/or the Court determines that damages are uncertain, Plaintiff request a hearing before the Court to determine damages.

---

[1]   *See* https://occc.texas.gov/publications/interest-rates.

### III. CONCLUSION

32. For the foregoing reasons, Plaintiff asks that the Court enter a default judgment against Aagaard in the amount of $3,011,285.24, plus pre-judgment interest at the rate of 8.5%, accruing from November 11, 2022, until the day before entry of final judgment, with the pre-judgment interest rate computed as simple interest rather than compound interest.

Dated: September 24, 2024

Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Aaron Davidson*
Aaron D. Davidson (Texas Bar No. 24007080)
901 Main Street, Suite 4120
Dallas, TX  75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
Email: adavidson@coleschotz.com

*Counsel to Deutsche Bank Trust Company Americas, as Trustee*

### CERTIFICATE OF SERVICE

Defendants ABW Vessel Management Ltd., ABW LLC, and Ole Aagaard-Jensen have not yet appeared in this case. Accordingly, this motion (and all previously-filed documents in this matter) will be served immediately in accordance with Fed. R. Civ. P. 5(b)(2) on any defendant that appears or notifies the undersigned that they have retained counsel.

*/s/ Aaron Davidson*
Aaron Davidson